Kurt OHNESORGE, Appellant,

v.

WINFREE ACADEMY CHARTER SCHOOL, Appellee.

No. 05–09–01453–CV.

Court of Appeals of Texas, Dallas.

Nov. 16, 2010.

W.D. Masterson, Theodore Anderson, John H. Crouch, Kilgore & Kilgore, PLLC, Dallas, TX, for Appellant.

Robert Allen Schulman, Joseph E. Hoffer, Rogers, Morris & Grover, L.L.P., for Appellee.

Before Justices MORRIS, MOSELEY, and MYERS.

## OPINION

Opinion By Justice MYERS.

Kurt Ohnesorge appeals the trial court's order dismissing for want of jurisdiction his cause of action against Winfree Academy Charter School under the Texas Whistleblower Protection Act.[1] In his sole issue, appellant asserts the School is subject to the Whistleblower Protection Act. We affirm the trial court's judgment.

The Whistleblower Protection Act is set forth in chapter 554 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. §§ 554.001–.010 (West 2004). The Act prohibits a state or local governmental entity from taking adverse personnel action against a public employee who reports in good faith a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority. *Id.* § 554.002(a). The Act defines "local governmental entity" as: "a political subdivision of the state, including a: (A) county; (B) municipality; (C) public school district; or (D) special-purpose district or authority." *Id.* § 554.001(2). In the School's motion to dismiss, the School argued that it was not a local governmental entity as defined in the Act and, therefore, not subject to the Act. In his response, appellant argued that the School was a local governmental entity. The trial court granted the School's motion to dismiss.

---

1. Appellant also alleged the School was liable under *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985), for firing him for refusing to perform an illegal act. The School alleged in its motion to dismiss that this cause of action was barred by governmental immunity. Appellant does not assert on appeal that the trial court erred in dismissing this cause of action.

In his sole issue, appellant contends the School, an open-enrollment charter school, is subject to the Whistleblower Protection Act.[2] "The Whistleblower Act is a broad remedial measure intended to encourage disclosure of governmental malfeasance and corruption." *City of Waco v. Lopez,* 259 S.W.3d 147, 154 (Tex.2008). Appellant argues that the Act is a remedial statute and must be construed liberally to give full effect to the legislature's purpose. *See Davis v. Ector County, Tex.,* 40 F.3d 777, 785 (5th Cir.1994). "Liberally construing a provision, however, does not permit divorcing its application from the words in the statute." *Nationwide Ins. Co. v. Elchehimi,* 249 S.W.3d 430, 435 (Tex.2008).

In construing a statute, a reviewing court should determine and give effect to the legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000); *Jones v. State,* 175 S.W.3d 927, 930 (Tex.App.-Dallas 2005, no pet.). If the meaning of the statutory language is unambiguous, a reviewing court adopts, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex.1999); *Jones,* 175 S.W.3d at 930. If a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity. *Fitzgerald,* 996 S.W.2d at 865–66; *Jones,* 175 S.W.3d at 930. When we interpret a code enacted by the legislature, we read words and phrases in context and construe them according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a); *see Jones,* 175 S.W.3d at 930. Words are given their ordinary meaning. *See Jones,* 175 S.W.3d at 930.

Appellant asserts that the statutes and administrative regulations state that open-enrollment charter schools are "public schools." *See* TEX. EDUC.CODE ANN. § 12.105 (West 2006) ("An open-enrollment charter school is part of the public school system of this state."); 19 Tex. Admin. Code § 100.1011(3) (Tex. Educ. Agency, Definitions) (defining "charter school" as "[a] Texas public school operated by a charter").[3] However, the issue is not whether an open-enrollment charter school is a "public school" but whether it is a "local governmental entity" by being a "public school district" or other "political

---

2. Whether the School was subject to the Whistleblower Protection Act is the only argument appellant presents on appeal. Appellant does not argue that the trial court's dismissal for want of jurisdiction was erroneous because the court had subject-matter jurisdiction over the cause regardless of whether the School was subject to the Act. To the extent such an argument could have been raised, we express no opinion on it but confine ourselves to the argument presented on appeal. *See Pat Baker Co. v. Wilson,* 971 S.W.2d 447, 450 (Tex.1998) (per curiam) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error."); *Selz v. Friendly Chevrolet, Ltd.,* 152 S.W.3d 833, 838 (Tex.App.-Dallas 2005, no pet.) ("We may not reverse a trial court's judgment in the absence of properly assigned error.").

3. Appellant also cites to an interim report of the 77th Legislature as demonstrating the legislature's intent that open-enrollment charter schools be treated as public schools. *See* House Comm. on Public Educ., Interim Report to the 77th Legislature, 76th Leg., R.S. (2000). We addressed the identical argument in *LTTS Charter School, Inc. v. Palasota,* 293 S.W.3d 830 (Tex.App.-Dallas 2009, pet. filed). As we stated in that case, "We find no support for [the] contention that a subcommittee report written by three members of a nine-member committee demonstrates a clear picture of legislative intent." *Palasota,* 293 S.W.3d at 836. Furthermore, as discussed above, the fact that an open-enrollment charter school may be subject to the same laws as public schools does not make them subject to laws that apply to public school districts.

subdivision." *See LTTS Charter Sch., Inc. v. C2 Constr., Inc.,* 288 S.W.3d 31, 34 (Tex.App.-Dallas 2009, pet. granted) (section 12.105 "does not establish an open-enrollment charter school as being the same as a school district").

Appellant argues that the School falls within the definition of local governmental entity and political subdivision because it is a public school district. Appellant points out that the School's website stated the School's name is "Winfree Academy Charter School District" and listed its email address as "wacsd." However, the School's calling itself a school district on its website and email address does not make it a public school district. The issue is whether an open-enrollment charter school is a public school district under the law. The education code does not define "public school district." However, the Texas Constitution and statutes make clear that a public school district is a defined geographic region with a board of trustees overseeing the management of the free public schools within that region. TEX. CONST. art. VII, § 3; TEX. EDUC.CODE ANN. §§ 11.002, .051, .303, .352 (West 2006). An open-enrollment charter school is a school, not a district. *See* 19 Tex. Admin. Code § 100.1011(3) (defining "Charter school" as "A Texas public school operated by a charter holder under an open enrollment charter . . . ."). Thus, an open-enrollment charter school may be a public school, but it is not a public school district. *See C2 Constr.,* 288 S.W.3d at 34–35. We conclude the School is not a public school district under section 554.001(2) of the government code even though the school referred to itself as a school district in its website.

■ Appellant also argues that the School is a local governmental entity because it is a political subdivision. In *Guaranty Petroleum Corp. v. Armstrong,* 609 S.W.2d 529 (Tex.1980), the supreme court defined the attributes of a political subdivision. The supreme court stated that a political subdivision:

- has jurisdiction over a portion of the State;
- the members of its governing body are elected in local elections or are appointed by locally elected officials; and
- has the power to assess and collect taxes.

*Id.* at 531. An open-enrollment charter school has no jurisdiction outside its own campus, the members of its governing body are selected according to the methods set out in the charter, and it lacks the power to assess and collect taxes. *See* TEX. EDUC.CODE ANN. §§ 12.102, .111. We conclude open-enrollment charter schools are not "political subdivisions."

■ Appellant also argues that the legislature has made charter schools subject to the same laws, including the Whistleblower Protection Act, that are applicable to public schools generally, citing section 12.103(a) of the education code. Section 12.103(a) states, "Except as provided by Subsection (b) . . . , an open-enrollment charter school is subject to federal and state laws and rules governing public schools . . . ." TEX. EDUC.CODE ANN. § 12.103(a) (West 2006). However, the Whistleblower Protection Act makes "public school districts," not "public schools," subject to it. Accordingly, section 12.103(a) does not make the School subject to the Act.

■ Appellant relies on two Texas Attorney General opinions in support of his argument that the School is a political subdivision. The opinions of the Texas Attorney General are not controlling authority, but they may be cited as persuasive authority. *Commissioners Court v. Agan,* 940 S.W.2d 77, 82 (Tex.1997); *C2 Constr.,* 288 S.W.3d at 35. Appellant

quotes from Texas Attorney General Opinion No. GA–0664, which stated, "[w]e see no basis for distinguishing a charter school from an independent school district. . . ." Tex. Att'y Gen. Op. No. GA–0664 (2008). The question before the Attorney General was whether an open-enrollment charter school was subject to the constitutional prohibition barring a county from making a gratuitous payment to a school district. *See id.* ("We see no basis for distinguishing a charter school from an independent school district with respect to gratuitous payment of a county's public money. Consequently, a court would likely conclude that article III, section 52 applies to prohibit a county from gratuitously donating county funds to a charter school, the same as to an independent school district." (citations omitted)); *see also* TEX. CONST. art. III, § 52; *C2 Constr.*, 288 S.W.3d at 35. As we stated in *C2 Construction,* "the opinion does not support the broad proposition that an open-enrollment charter school is a 'political subdivision' in all situations." *C2 Constr.*, 288 S.W.3d at 35. The case before us does not involve a gratuitous payment of a county's public money to a charter school, or anything similar. We conclude opinion GA–0664 is not applicable.

Appellant also cites to Attorney General opinion No. GA–0629, which concerned whether a charter school was a "political subdivision" under chapter 606 of the Texas Government Code for purposes of social security coverage for the political subdivision's employees. Tex. Att'y Gen. Op. No. GA–0629 (2008). As the Attorney General

observed, "Chapter 606's definition of 'political subdivision' is unique in Texas Statutes and it serves the limited purpose of delineating entities eligible for inclusion" in the social security program.[4] *Id.* (footnote omitted). That definition, however, is limited to chapter 606 of the government code. *See* TEX. GOV'T CODE ANN. § 606.001 (West 2004) ("In this chapter: . . ."). The Attorney General's interpretation of the term "political subdivision" under section 606.001 of the government code is not applicable to the definition of "political subdivision" under section 554.001 of the government code. *See C2 Constr.,* 288 S.W.3d at 35–36.

The legislature has specified the statutes under which an open-enrollment charter school is considered a "governmental entity," "political subdivision," "local government," or "governmental body." *See* TEX. EDUC.CODE ANN. §§ 12.1051, .1052, .1053 (West 2006 & Supp.2010); TEX. LOCAL GOV'T CODE ANN. § 176.001(3) (West 2008). None of these provisions make an open-enrollment charter school a "governmental entity," "governmental body," "local governmental entity," "political subdivision," or "school district" for purposes of the Whistleblower Protection Act.

We conclude the School is not subject to the Whistleblower Protection Act. We overrule appellant's sole issue.

We affirm the trial court's judgment.

---

4. Section 606.001(3) defines "Political subdivision" as including a county, a municipality; or

    an instrumentality of the state, of another political subdivision, or of the state and another political subdivision:

        (i) that is a juristic entity that is legally separate and distinct from the state or political subdivision; and

        (ii) whose employees are not employees of the state or political subdivision.

TEX. GOV'T CODE ANN. § 606.001(3) (West 2004). In explaining the definition, the Attorney General stated, "the continued use of the term 'political subdivision' must refer to a 'political subdivision' that is other than the entity actually being examined under the definition." Tex. Att'y Gen. Op. No. GA–0629 n. 13.